UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO DAVID PINEDA PEREZ,<br><br>                                Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center, et al.,<br><br>                                Respondents. | Case No.: 25cv2820-LL-KSC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return [ECF No. 5], and Petitioner filed a Traverse [ECF No. 6]. For the following reasons, the Court **GRANTS** the Petition.

**I.     BACKGROUND**

Petitioner is a Honduran national who has been present in the United States since he entered as an unaccompanied minor in November 2018. Pet. ¶ 1. On March 28, 2025, ICE agents stopped Petitioner on his way to work and arrested him. *Id.* ¶ 21. He has been detained since then at Otay Mesa Detention Center. *Id.* ¶¶ 3, 21. He was charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as being present in the United States without admission or parole. *Id.* at 13.

/ / /

Petitioner requested to be released on bond and on July 28, 2025, an immigration judge ordered Petitioner released on a $1,500 bond after finding he has "significant ties to the community including two United States citizen children," "poses neither a danger to the community nor a threat to national security," and is "not such a significant flight risk." *Id.* at 18, 22–25. However, his release was automatically stayed under 8 C.F.R. § 1003.19(i)(2) when ICE filed a notice of its intent to appeal the IJ bond decision. *Id.* ¶¶ 2–3; *id.* at 27. On August 8, 2025, ICE appealed the decision of the immigration judge. *Id.* ¶ 5; *id* at 29.

On October 21, 2025, Petitioner filed the instant Petition for a writ of habeas corpus alleging that the automatic-stay regulation exceeds statutory authority and violates the Fifth Amendment's Due Process Clause, and that he is wrongfully detained under 8 U.S.C. § 1225(b)(2). *Id.* ¶¶ 30–50. He seeks, *inter alia*, a writ of habeas corpus directing Respondents to immediately release him from custody under reasonable conditions of supervision. *Id.* at 11.

On October 22, 2025—one day after Petitioner filed this Petition—the Bureau of Immigration Appeals ("BIA") vacated the immigration judge's order granting Petitioner's release on bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). ECF No. 5-1 at 2. In that case, the BIA held that a noncitizen present in the United States for almost three years without admission or inspection and arrested on a warrant issued by the Department of Homeland Security ("DHS") was subject to § 1225(b)(2)(A) and its provision for mandatory detention, and affirmed the immigration judge had no authority to hear a bond request or grant bond. *Matter of Yajure Hurtado*, 29 I&N Dec. at 220–21, 225–27 (BIA 2025).

## II.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those

aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.   DISCUSSION

Respondents argue that because the BIA has vacated the immigration judge's bond order and the automatic stay is no longer in place, the Petition should be dismissed as moot. ECF No. 5 at 7. The Court disagrees, as Petitioner has also challenged his mandatory detention under 8 U.S.C. § 1225(b)(2) as unlawful. Petitioner has a live issue because he remains detained under § 1225(b). *See Powell v. McCormack*, 395 U.S. 486, 497 (1969) ("Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy.").

### A.   Jurisdiction

Respondents argue that as a threshold matter, Petitioner's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(a)(5). ECF No. 5 at 7–11.

#### 1.   8 U.S.C. § 1252(g)

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondents argue that Petitioner's claims are barred because the decision to detain a noncitizen pending removal is a challenge "to the method by which the government chooses to commence removal proceedings," which removes district court jurisdiction. ECF No. 5 at 8. Petitioner opposes, arguing that § 1252(g) does not apply because he is not
///

1  challenging any discretionary action to "commence proceedings" and is instead
2  challenging the lawfulness of his detention. ECF No. 6 at 3.

3        The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The
4  Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of
5  deportation claims" but instead "applies only to three discrete actions that the Attorney
6  General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or
7  *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471,
8  482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2
9  (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g)
10 narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We
11 did not interpret this language to sweep in any claim that can technically be said to 'arise
12 from' the three listed actions of the Attorney General. Instead, we read the language to
13 refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281,
14 294 (2018) (citation omitted). Petitioner is not challenging the commencement of removal
15 proceedings but is instead claiming a lack of legal authority to subject him to mandatory
16 detention under 8 U.S.C. § 1225(b)(2) during proceedings. *See Ibarra-Perez*, 2025 WL
17 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal
18 order due to a violation of a court order, the Constitution, INA, or international law, does
19 not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does
20 not limit the Court's jurisdiction in this matter.

21       **2.**    **8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(a)(5)**

22       Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact,
23 including interpretation and application of constitutional and statutory provisions, arising
24 from any action taken or proceeding brought to remove an alien from the United States
25 under this subchapter shall be available only in judicial review of a final order under this
26 section." 8 U.S.C. § 1252(b)(9). Section 1252(a)(5) adds that "a petition for review filed
27 with an appropriate court of appeals in accordance with this section shall be the sole and
28 exclusive means for judicial review of an order of removal entered or issued under any

provision of this chapter," except for certain actions challenging orders under § 1225(b)(1). 8 U.S.C. § 1252(a)(5), (e).

Respondents argue that § 1252(b)(9) and § 1252(a)(5) apply here because they remove the Court's jurisdiction "to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." ECF No. 5 at 10.

The Court finds § 1252(b)(9) and § 1252(a)(5) do not apply to Petitioner's claims. The Supreme Court has explained that "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (quoting *Jennings*, 583 U.S. at 294–95). The Ninth Circuit has also recognized that "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Petitioner is claiming a lack of legal authority to subject him to mandatory detention under § 1225 instead of detention with a bond hearing under § 1226(a), which is not a review for an order of removal, the decision to seek removal, or the process by which removability will be determined. *See Jennings*, 583 U.S. at 292–95 (finding that § 1252(b)(9) did not deprive the Court of jurisdiction to determine whether § 1225 and § 1226 require detention without a bond hearing). Accordingly, § 1252(b)(9), and by extension § 1252(a)(5), does not bar the Court from jurisdiction in this case.

**B.    Merits**

Petitioner argues that he is wrongfully held under the mandatory detention provision of 8 U.S.C. § 1225(b)(2) and should instead be held under the discretionary detention of 8 U.S.C. § 1226(a). Pet. ¶ 31, 47–50; ECF No. 6 at 3–5.

Noncitizens are detained during removal proceedings under two statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and concerns "applicants for

admission" who are defined for purposes of § 1225 as an "alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). An applicant for admission "seeking admission or readmission to or transit through the United States" is inspected by immigration officers. § 1225(a)(3). After inspection, certain applicants for admission who are deemed to be inadmissible shall be subject to expedited removal— "without further hearing or review"—unless they indicate an intention to apply for asylum or a fear of persecution, in which case they will be referred for a credible fear interview by an asylum officer. § 1225(b)(1)(A)(i)-(ii); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). For the other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for a proceeding under the regular removal process of § 1229a. § 1225(b)(2)(A). Applicants for admission detained under either prong of § 1225(b) are subject to mandatory detention until removal proceedings have concluded, but may be paroled into the United States by DHS "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 300, 302 (finding that parole is the only statutory provision for release from detention under § 1225(b) during removal proceedings). There is no statutory right to a bond hearing for noncitizens detained under § 1225(b). *See Jennings*, 583 U.S. at 296–97.

Section 1226 is titled "Apprehension and detention of aliens" and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). The government may then "continue to detain the arrested alien" or release the alien on bond or conditional parole. § 1226(a)(1)-(2). After the initial decision is made to either detain or release the noncitizen, the noncitizen may request a bond hearing (i.e., custody redetermination) before an immigration judge. § C.F.R. § 1236.1(d)(1). However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. Section 1226(c) specifies that noncitizens who are

inadmissible or deportable because of certain crimes are ineligible to be released on bond or parole, unless it is deemed necessary for witness-protection purposes. §§ 1226(a), (c).

Petitioner and Respondents interpret § 1225 and § 1226 differently. Petitioner contends that the plain text of § 1226 applies to noncitizens like himself who were residing in the United States at the time they were arrested and are detained pending a final administrative decision in their immigration proceedings. Pet. ¶¶ 47–50; ECF No. 6 at 4–5. Respondents oppose, arguing that Petitioner is an "applicant for admission" per the plain language of the statue and subject to mandatory detention under § 1225(b)(2). ECF No. 5 at 11–14.

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted). "We must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (citations omitted). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks and citation omitted). Thus, "when deciding whether language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240 (9th Cir. 2022), *aff'd,* 602 U.S. 222 (2024) (internal quotation marks omitted) (quoting *King*, 576 U.S. at 486).

The Court finds the plain text of § 1225(b)(2) does not support Respondents' contention that it applies to any noncitizen present in the United States who has not been admitted. The terms, title, and context indicate a narrower application. An "applicant for admission" detained under § 1225(b)(2) requires an "examining immigration officer" to determine that the noncitizen "seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Broadly reading §1225(b)(2) detention to merely require being "applicants for admission"—noncitizens present in the United States who have not been admitted or who arrive in the United States—ignores the other language that also

requires them to be "seeking admission" and for the examining officer to determine they are "not clearly and beyond a doubt entitled to be admitted." *See Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) ("[A] court 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" (citation omitted)); *see also Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 2809996, at *6 (D. Mass. Oct. 3, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4–5 (E.D. Cal. Sept. 23, 2025); *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025). Furthermore, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," which indicates that this section is limited to people applying for admission when they arrive in the United States or upon recent entry. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks and citation omitted)). Petitioner was not actively "seeking admission" upon arrival or recent entry at the border, nor did immigration officers inspect Petitioner and determine he was not entitled to be admitted. Instead, he had been living in the country for years when he was arrested on his way to work.

Respondents contend that "seeking admission" is simply a characteristic of all "applicants for admission" and not a separate requirement, but the Court is not persuaded. *See* ECF No. 5 at 13–14. As other courts have found, the use of the present participle "seeking" "necessarily implies some sort of present-tense action." *See, e.g.*, *Lepe*, 2025 WL 2716910, at *5 (quoting *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). The plain text of § 1225(b)(2)(A) requires a noncitizen present without admission to be actively seeking lawful entry. *See id.*; *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal.

Oct. 24, 2025) (agreeing with other courts in the Ninth Circuit who find that "seeking admission" requires an affirmative act such as entering the United States or applying for status (citing cases)). Respondents' interpretation would render the term "seeking admission" superfluous. *See Shulman*, 58 F.4th at 410–11; *Lepe*, 2025 WL 2716910, at *5 ("The government's position would make the 'seeking admission' language meaningless and violate the rule against surplusage." (citations omitted)). The Ninth Circuit has already rejected an interpretation of "applicant for admission" that would consider any applicant for admission as someone also "deemed to have made an actual *application* for admission." *See Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020); *see also Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025) (citing *Torres*, 976 F.3d 918).

Additionally, if Respondents' argument that all noncitizens present in the country without admission are subject to mandatory detention under § 1225(b)(2) is true, it would render superfluous a recent amendment to § 1226(c). *Lepe*, 2025 WL 2716910, at *6 (collecting cases). Section 1226(a) provides discretionary detention of noncitizens pending a decision on removal, except for certain noncitizens who are inadmissible or deportable due to certain crimes described in § 1226(c). In 2025, the Laken Riley Act added a subsection to § 1226(c)(1), denying bond or parole to any noncitizen who is both (1) inadmissible under § 1182(a)(6)(A), (6)(C), or (7) as a noncitizen "present without admission or parole," or without valid entry documents, or who used fraud or misrepresentation to obtain entry documents, *and* (2) charged with, arrested for, or convicted of certain crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat 3 (2025); § 1226(c)(1)(E). In other words, if noncitizens are present without admission and they have *not* committed certain crimes, they are detained under § 1226(a)'s default provisions. *See* § 1226(a) (providing discretion to release noncitizens on bond or parole "[e]xcept as provided in subsection (c)"); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025). "As the Supreme Court has recognized, when Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions,

the statute generally applies." *Rodriguez*, 779 F. Supp. 3d at 1256–57 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Therefore, if—as Respondents urge—all noncitizens present without admission were already subject to mandatory detention under § 1225(b)(2), there would be no need for an amendment that mandates detention for all noncitizens "present without admission or parole" *and* who have been charged with certain crimes. *See Lepe*, 2025 WL 2716910, at *6; *Garcia*, 2025 WL 2549431, at *6. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogated on other grounds b*y *Riley v. Bondi*, 145 S. Ct. 2190 (2025). The Court will not find that Congress passed the Laken Riley Act to add an amendment that performs the same function as §1225(b)(2). *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Accordingly, under the plain language of § 1225 and § 1226, the Court finds, as have many other courts addressing the same issue, that Petitioner's detention, as a noncitizen present in the United States without being admitted or paroled under § 1182(a)(6)(A)(i) and who was residing in the country prior to being charged, is governed by the discretionary detention provision of § 1226(a) and not the mandatory detention of § 1225(b)(2). *See, e.g.*, *Contreras-Cervantes v. Raycraft*, No. 2:25-CV-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases). *But see Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (finding petitioners as noncitizens residing in the country without inspection or parole are "applicants for admission" and properly detained under § 1225(b)(2)). This finding also comports with the Supreme Court's interpretation that § 1225(b) applies to the detention of "aliens seeking admission into the country" while § 1226 applies to "aliens already in the country" during removal proceedings. *See Jennings*,

583 U.S. at 289. It is also consistent with years of agency practice based on regulations from EOIR in 1997 issued to implement the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which includes the detention provisions of § 1225 and § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10312 (Mar. 6, 1997). The agency regulation explained under a section titled "Apprehension, Custody, and Detention of Aliens" that "non-criminal aliens" are subject to "the new $1,500 minimum bond specified by IIRIRA," and that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Id.* at 10323.

Respondents contend that if the Court finds Petitioner subject to detention under § 1226(a), the proper remedy would be a new bond hearing under § 1226(a). ECF No. 5 at 14. They argue that the Court lacks jurisdiction to order Petitioner's release or the reinstatement of the immigration judge's bond order that was vacated by the BIA pursuant to 8 U.S.C. § 1226(e), which states that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* (quoting 8 U.S.C. § 1226(e)). Petitioner is silent on this argument. Accordingly, the Court will order a new bond hearing instead of release.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.[1]

2. Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within **seven (7) days** of the date of this order. At any such hearing, Respondents **SHALL NOT** deny Petitioner bond on the basis that 8 U.S.C. § 1225(b)(2) requires mandatory detention.

3. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED**.

Dated: December 5, 2025

_____
Honorable Linda Lopez
United States District Judge

---

[1] To the extent Petitioner requests attorney's fees, the Court denies it without prejudice.